**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CHENG GUO, Individually and On Behalf of All Others Similarly Situated, | No.: 1:19-cv-05667-AMD-RML |
| Plaintiff, | MEMORANDUM OF LAW IN SUPPORT OF MOTION OF XIAOHAI YAN FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF COUNSEL |
| v. | |
| RUHNN HOLDING LIMITED, MIN FENG, LEI SUN, CHAO SHEN, ZHENBO CHI, KE CHENG, SHEK YUEN TING, FENGCHUN JIN, SHANGZHEN LI, ZHENXING SHAO, PEN HUNG TUNG, JUNHONG QI, XIAOCAO XU, CITIGROUP GLOBAL MARKETS INC., UBS SECURITIES LLC and TOP CAPITAL PARTNERS LIMITED, | |
| Defendants. | |
| XIAOHAI YAN, Individually and On Behalf of All Others Similarly Situated, | |
| Plaintiff, | No.: 2:19-cv-06162-SJF-SIL |
| v. | |
| RUHNN HOLDING LIMITED, MIN FENG, LEI SUN, CHAO SHEN, ZHENBO CHI, KE CHENG, SHEK YUEN TING, FENGCHUN JIN, SHANGZHEN LI, ZHENXING SHAO, PEN HUNG TUNG, JUNHONG QI, and XIAOCAO XU, | |
| Defendants. | |

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ...................................................................................1

STATEMENT OF FACTS ..........................................................................................1

ARGUMENT...............................................................................................................4

    A.    THE RELATED ACTIONS SHOULD BE CONSOLIDATED FOR ALL PURPOSES...........................................................................................................4

    B.    YAN SHOULD BE APPOINTED LEAD PLAINTIFF.........................................6

        1.    Yan Is Willing to Serve as a Class Representative .....................................7

        2.    Yan Has the "Largest Financial Interest" .......................................7

        3.    Yan Otherwise Satisfies the Requirements of Rule 23 of the Federal Rules of Civil Procedure .......................................................8

        4.    Yan Will Fairly and Adequately Represent the Interests of the Class and Is Not Subject to Unique Defenses.............................................10

    C.    LEAD PLAINTIFF'S SELECTION OF COUNSEL SHOULD BE APPROVED ...........................................................................................................11

CONCLUSION.............................................................................................................12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.F.I.K. Holding SPRL v. Fass*,
  216 F.R.D. 567 (D. N.J. 2003)..................................................................................................8

*In re Am. Bus. Fin. Servs., Inc. Sec. Litig.*,
  2004 U.S. Dist. LEXIS 10200 (E.D. Pa. Jun. 3, 2004)...........................................................8

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997)..............................................................................................................10

*Baby Neal v. Casey*,
  43 F.3d 48 (3d Cir. 1994) .......................................................................................................9

*Bassin v. Decode Genetics, Inc.*,
  230 F.R.D. 313 (S.D.N.Y. 2005) ............................................................................................5

*Beck v. Maximus, Inc.*,
  457 F.3d 291 (3d Cir. 2006).............................................................................................9, 10

*Blackmoss Invs., Inc. v. ACA Capital Holdings, Inc.*,
  252 F.R.D. 188 (S.D.N.Y. 2008) ............................................................................................5

*In re Comverse Tech., Inc., Sec. Litig.*,
  2007 U.S. Dist. LEXIS 14878 (E.D.N.Y. Mar. 2, 2007).........................................................7

*In re Comverse Technology, Inc. Securities Litigation*,
  No. 06-CV-1825 (E.D.N.Y.)..................................................................................................11

*Danis v. USN Communs., Inc.*,
  189 F.R.D. 391 (N.D. Ill. 1999)..............................................................................................9

*Fischler v. Amsouth Bancorporation*,
  176 F.R.D. 583 (M.D. Fla. 1997)............................................................................................9

*In re GE Sec. Litig.*,
  No. 09 Civ. 1951 (DC), 2009 U.S. Dist. LEXIS 69133 (S.D.N.Y. July 29,
  2009) .......................................................................................................................................5

*Gluck v. Cellstar Corp.*,
  976 F. Supp. 542 (N.D. Tex. 1997) .........................................................................................9

*Greebel v. FTP Software*,
  939 F. Supp. 57 (D. Mass. 1996) ............................................................................................8

*Janovici v. DVI, Inc.*,
    No. 03-4795, 2003 U.S. Dist. LEXIS 22315 (E.D.Pa. Nov. 25, 2003) ....................................8

*Johnson v. Celotex Corp.*,
    899 F.2d 1281 (2d Cir. 1990)...................................................................................................5

*Lax v. First Merch. Acceptance Corp.*,
    1997 U.S. Dist. LEXIS 11866 (N.D. Ill. Aug. 6, 1997) ..........................................................7

*Malcolm v. Nat'l Gypsum Co.*,
    995 F.2d 346 (2d Cir. 1993).....................................................................................................5

*In re Olsten Corp. Sec. Litig.*,
    3 F. Supp.2d 286 (E.D.N.Y. 1998) .......................................................................................7, 9

*Osher v. Guess
?, Inc.*, 2001 U.S. Dist. LEXIS 6057 (C.D. Cal. Apr. 26, 2001) ............................................11

*In re Oxford Health Plans, Inc. Sec. Litig.*,
    182 F.R.D. 42 (S.D.N.Y. 1998) ...............................................................................................9

*Riordan v. Smith Barney*,
    113 F.R.D. 60 (N.D. Ill. 1986)...............................................................................................10

*In re Tronox, Inc. Sec. Litig.*,
    262 F.R.D. 338 (S.D.N.Y. 2009) .............................................................................................5

*In re Vicuron Pharms., Inc. Sec. Litig.*,
    225 F.R.D. 508 (E.D. Pa. 2004)...............................................................................................7

**Statutes**

15 U.S.C. § 77z-1(a) ...................................................................................... *passim*

Private Securities Litigation Reform Act of 1995 .................................................. *passim*

Securities Act of 1933.................................................................................................1

**Rules**

Fed. R. Civ. P. 23 .......................................................................................... *passim*

Fed. R. Civ. P. 42.................................................................................................1, 5

**Other Authorities**

Manual for Complex Litigation (Third) (1995).............................................................5

THE WALL STREET JOURNAL, *Fiat Chrysler to Settle Lawsuit for $110 Million*, April 8, 2019 (available at https://www.wsj.com/articles/fiat-chrysler-to-settle-lawsuit-for-110-million-11554746066) ...........................................................................11

Movant Xiaohai Yan ("Yan") respectfully submits this Memorandum of Law in support of his motion, pursuant to Section 27(a)(3) of the Securities Act of 1933 (the "Securities Act"), 15 U.S.C. § 77z-1(a)(3), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA") and Fed. R. Civ. P. 42, for the entry of an Order: (1) consolidating the above-captioned actions (the "Related Actions"); (2) appointing Yan as Lead Plaintiff on behalf of all persons or entities who purchased Ruhnn Holding Limited ("Ruhnn" or the "Company") American Depositary Shares ("ADSs") pursuant and/or traceable to the Company's April 3, 2019 initial public offering (the "IPO"); and (3) approving Lead Plaintiff's selection of Pomerantz LLP ("Pomerantz") as Lead Counsel for the Class.

## PRELIMINARY STATEMENT

Pursuant to the PSLRA, the Court is to appoint as Lead Plaintiff the movant who possesses the largest financial interest in the outcome of the action and who satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure. 15 U.S.C. § 77z-1(a)(3)(B)(iii)(I). Yan, with losses of approximately $798 in connection with his purchases of Ruhnn ADSs pursuant and/or traceable to the IPO, believes he has the largest financial interest in the relief sought in the Related Actions. Yan further satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure as he is an adequate representative with claims typical of the other Class members. Accordingly, Yan respectfully submits that he should be appointed Lead Plaintiff.

## STATEMENT OF FACTS

As alleged in the Complaints in the Related Actions, Ruhnn describes itself as China's largest key opinion leader ("KOL") facilitator and largest KOL facilitator in China's e-commerce market. So-called KOLs are essentially social media influencers, *i.e.*, individuals who create

1

content on social media platforms such as Facebook, YouTube, Tik Tok, and Instagram with the hope of garnering a large public following. As a purported KOL facilitator, Ruhnn contracts with social media influencers who are paid to promote, market, and advertise products and services to their fans and followers. Ruhnn claims to recruit, train, and manage KOLs and provide them with analytical support. The Company describes such activities as "incubating" KOLs. Ruhnn's KOLs primarily market women's apparel, cosmetics, shoes, handbags, and other fashion products on social media platforms popular in China, such as Miaopai, Tik Tok, and Kuaishou.

Ruhnn's KOLs provide marketing services both to Ruhnn-owned and -operated brands and stores and to Ruhnn's third-party customers. The Company describes sales of products through Ruhnn's own stores as the Company's product sales business, which Ruhnn also refers to as its "full-service model." The majority of these online stores are located or hosted on third-party ecommerce platforms and are operated and marketed in the name of Ruhnn's KOLs. As of December 31, 2018, Ruhnn purportedly owned and operated ninety-one online stores. Ruhnn earns revenue from these product sales by taking a percentage of the sales price at the time the product is sold. The Company's full-service model is its largest and most important operating segment, accounting for over 88% of Ruhnn's total net revenues for the nine months ended December 31, 2018.[1]

Ruhnn also derives revenue from its service business, which Ruhnn refers to as its "platform model." Ruhnn launched its platform model in 2017 to market its KOLs and KOL services to third parties, such as brands, retailers, designers, and manufacturers. As of December

---

[1] Ruhnn's fiscal year ends on March 31st of the calendar year.

31, 2018, Ruhnn claimed to have over 500 customers using its platform services.  Ruhnn earns fees for these services under a variety of arrangements.

On March 6, 2019, Ruhnn filed with the United States Securities Exchange Commission a registration statement on Form F-1 for the IPO, which, after several amendments, was declared effective on April 2, 2019 (the Form F-1, together with all amendments, is referred to herein as the "Registration Statement").  One day later, on April 3, 2019, the Company filed a prospectus for the IPO on Form 424B4, which incorporated and formed part of the Registration Statement. The Registration Statement was used to sell to the investing public approximately 10 million Ruhnn ADSs, representing 50 million Ruhnn Class A ordinary shares, at $12.50 per share.  The above-captioned defendants ("Defendants") generated $125 million in gross offering proceeds from their sale of Ruhnn ADSs in the IPO.

The Complaints allege that the Registration Statement was false and misleading and omitted to state material adverse facts.  Specifically, Defendants failed to disclose to investors that by the time of the IPO:   (i) the number of Ruhnn's full-service online stores had plummeted to just fifty-six, a sequential decline of nearly 40%; (ii) the number of KOLs servicing the Company's online stores had fallen 44% to just fourteen KOLs; (iii) the Company's net revenues from its full-service model had already declined 46% on a sequential basis to RMB186.9 million in the fourth quarter of 2019, which also represented an anemic 1.4% quarterly growth rate on a year-over-year basis; (iv) the Company's full-service operating segment was not rapidly expanding, but, in fact, was rapidly contracting as of the date of the IPO; and (v) as a result, the Registration Statement was materially false and/or misleading and failed to state information required to be stated therein.

On June 14, 2019, Ruhnn reported its fiscal year and fourth quarter 2019 financial results. These results were for the quarter prior to the quarter in which defendants had conducted the IPO. In the fiscal 2019 press release, Ruhnn reported that, as of March 31, 2019, the Company only had fifty-six stores in operation, which indicated that the Company had closed nearly 40% of the ninety-one stores Defendants reported operating in the Registration Statement. The press release also disclosed that Ruhnn's product sales had fallen 46% sequentially and grown by a meager 1.4% year over year. At the same time, Ruhnn's reported results in its service platform business were entirely eclipsed by the meager growth in the full-service product sales business. Revenue from platform services was $7.5 million and $22 million for the quarter and fiscal year, respectively, versus $28 million and $140 million in product sales for the quarter and year. Gross margin across the Company's revenue streams had also declined eighty basis points year over year, reflecting the Company's failure to approach profitability, as its most important operating segment, its full-service segment, had suffered a significant contraction prior to the IPO.

Since the IPO, and as a result of the disclosure of material adverse facts omitted from Ruhnn's Registration Statement, Ruhnn ADSs have fallen substantially below their IPO price, damaging Plaintiff and Class members.

## ARGUMENT

### A.    THE RELATED ACTIONS SHOULD BE CONSOLIDATED FOR ALL PURPOSES

Consolidation of cases is appropriate where, as here, the actions involve common questions of law and fact, and therefore consolidation would avoid unnecessary cost, delay, and overlap in adjudication:

> Where actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all of the matters at issue in the

4

> actions; it may order all the actions consolidated; and it may make such order concerning proceedings therein as may tend to avoid unnecessary costs or delay.

Fed. R. Civ. P. 42(a).  *See also* Manual for Complex Litigation (Third), § 20.123 (1995).

Consolidation is appropriate when the actions before the court involve common questions of law *or* fact.  *See* Fed. R. Civ. P. 42 (a); *Malcolm v. Nat'l Gypsum Co.*, 995 F.2d 346, 350 (2d Cir. 1993) (citing *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284 (2d Cir. 1990)); *In re Tronox, Inc. Sec. Litig.*, 262 F.R.D. 338, 344 (S.D.N.Y. 2009) (consolidating securities class actions); *Blackmoss Invs., Inc. v. ACA Capital Holdings, Inc.*, 252 F.R.D. 188, 190 (S.D.N.Y. 2008) (same). Differences in causes of action, defendants, or the class period do not render consolidation inappropriate if the cases present sufficiently common questions of fact and law, and the differences do not outweigh the interest of judicial economy served by consolidation. *See In re GE Sec. Litig.*, No. 09 Civ. 1951 (DC), 2009 U.S. Dist. LEXIS 69133, at *4–8 (S.D.N.Y. July 29, 2009) (consolidating actions asserting different claims against different defendants over different class periods).

The Related Actions clearly involve common questions of law *and* fact.  Each action was brought against the Company, as well as certain officers and directors of the Company, in connection with violations of the federal securities laws.  Accordingly, the Related Actions allege substantially the same wrongdoing—namely, that Defendants issued materially false and misleading statements and omissions that artificially inflated the price of the Company's securities and subsequently damaged the Class when the Company's share price crashed as the truth emerged.  Consolidation of the Related Actions is therefore appropriate.  *See Bassin v. Decode Genetics, Inc.*, 230 F.R.D. 313, 315 (S.D.N.Y. 2005) (consolidation of securities class actions is particularly appropriate in the context of securities class actions where the complaints are based on the same statements and the defendants will not be prejudiced); *In re GE*, 2009 U.S.

Dist. LEXIS 69133), at *5 ("Consolidation promotes judicial convenience and avoids unnecessary costs to the parties.").

### B.     YAN SHOULD BE APPOINTED LEAD PLAINTIFF

Yan should be appointed Lead Plaintiff because, to his knowledge, he has the largest financial interest in the Related Actions and otherwise meets the requirements of Rule 23. Section 27(a)(3)(B) of the PSLRA sets forth procedures for the selection of lead plaintiff in class actions brought under the Securities Act. The PSLRA directs courts to consider any motion to serve as lead plaintiff filed by class members in response to a published notice of the class action by the later of (i) 90 days after the date of publication, or (ii) as soon as practicable after the Court decides any pending motion to consolidate. *See* 15 U.S.C. § 77z-1(a)(3)(B)(i) & (ii).

Further, under 15 U.S.C. § 77z-1(a)(3)(B)(iii)(I), the Court is directed to consider all motions by plaintiffs or purported class members to appoint lead plaintiff filed in response to any such notice. Under this section, the Court "shall" appoint "the presumptively most adequate plaintiff" to serve as lead plaintiff and shall presume that plaintiff is the person or group of persons, that:

> (aa) has either filed the complaint or made a motion in response to a notice . . .;
>
> (bb) in the determination of the Court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 77z-1(a)(3)(B)(iii)(I).

As set forth below, Yan satisfies all three of these criteria and thus is entitled to the presumption that he is the most adequate plaintiff of the Class and, therefore, should be appointed Lead Plaintiff for the Class.

## 1.     Yan Is Willing to Serve as a Class Representative

On October 7, 2019, counsel for plaintiff in the first-filed of the Related Actions caused a notice to be published over *Business Wire* pursuant to Section 27(a)(3)(A)(i) of the PSLRA, which announced that a securities class action had been filed against Defendants, and advised investors in Ruhnn securities that they had until December 6, 2019—*i.e.*, 60 days—to file a motion to be appointed as Lead Plaintiff (the "Notice").   *See* Declaration of Jeremy A. Lieberman in Support of Motion ("Lieberman Decl."), Ex. A.

Yan has filed the instant motion pursuant to the Notice, and has submitted a signed Certification attesting that he is willing to serve as a representative for the Class, and provide testimony at deposition and trial, if necessary.  *See* Lieberman Decl., Ex. B.  Accordingly, Yan satisfies the first requirement to serve as Lead Plaintiff of the Class.

## 2.     Yan Has the "Largest Financial Interest"

The PSLRA requires a court to adopt a rebuttable presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class."  15 U.S.C. § 77z-1(a)(3)(B)(iii).

As of the time of the filing of this motion, Yan believes that he has the largest financial interest of any of the Lead Plaintiff movants based on the four factors articulated in the seminal case *Lax v. First Merch. Acceptance Corp.*, 1997 U.S. Dist. LEXIS 11866, at *7-*8 (N.D. Ill. Aug. 6, 1997) (financial interest may be determined by (1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered).[2] The most critical among the Lax Factors is the approximate loss suffered. *See, e.g., In re Vicuron*

---

[2] *See also In re Olsten Corp. Sec. Litig.,* 3 F. Supp.2d 286, 296 (E.D.N.Y. 1998).  *Accord In re Comverse Tech., Inc., Sec. Litig.*, 2007 U.S. Dist. LEXIS 14878, at *22-*25 (E.D.N.Y. Mar. 2, 2007) (collectively, the "Lax-Olsten" factors).

*Pharms., Inc. Sec. Litig.*, 225 F.R.D. 508, 511 (E.D. Pa. 2004); *Janovici v. DVI, Inc.*, No. 03-4795, 2003 U.S. Dist. LEXIS 22315, at *39 (E.D.Pa. Nov. 25, 2003); *In re Am. Bus. Fin. Servs., Inc. Sec. Litig.*, 2004 U.S. Dist. LEXIS 10200, at *2–3 (E.D. Pa. Jun. 3, 2004); *A.F.I.K. Holding SPRL v. Fass*, 216 F.R.D. 567, 572 (D. N.J. 2003).

Yan: (1) purchased 141 shares of Ruhnn ADSs pursuant and/or traceable to the IPO; (2) expended $1,763 on these purchases; (3) retained all of his shares of Ruhnn ADSs; and (4) as a result of the disclosures of the fraud, suffered a loss of $798 in connection with his purchases of Ruhnn ADSs pursuant and/or traceable to the IPO. *See* Lieberman Decl., Ex. C. Because Yan possesses the largest financial interest in the outcome of this litigation, he may be presumed to be the "most adequate" plaintiff. 15 U.S.C. § 77z-1(a)(3)(B)(iii)(I)(bb).

### 3. Yan Otherwise Satisfies the Requirements of Rule 23 of the Federal Rules of Civil Procedure

Section 27(a)(3)(B)(iii)(I)(cc) of the PSLRA further provides that, in addition to possessing the largest financial interest in the outcome of the litigation, Lead Plaintiff must "otherwise satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure." Rule 23(a) generally provides that a class action may proceed if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

In making its determination that Lead Plaintiff satisfies the requirements of Rule 23, the Court need not raise its inquiry to the level required in ruling on a motion for class certification; instead a *prima facie* showing that the movant satisfies the requirements of Rule 23 is sufficient. *Greebel v. FTP Software*, 939 F. Supp. 57, 60 (D. Mass. 1996). Moreover, "typicality and

8

adequacy of representation are the only provisions relevant to a determination of lead plaintiff under the PSLRA." *In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42, 49 (S.D.N.Y. 1998) (citing *Gluck v. Cellstar Corp.*, 976 F. Supp. 542, 546 (N.D. Tex. 1997) and *Fischler v. Amsouth Bancorporation*, 176 F.R.D. 583 (M.D. Fla. 1997)); *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d at 296.

The typicality requirement of Fed. R. Civ. P. 23(a)(3) is satisfied where the named representative's claims have the "same essential characteristics as the claims of the class at large." *Danis v. USN Communs., Inc.*, 189 F.R.D. 391, 395 (N.D. Ill. 1999). In other words, "the named plaintiffs' claims [must be] typical, in common-sense terms, of the class, thus suggesting that the incentives of the plaintiffs are aligned with those of the class." *Beck v. Maximus, Inc.*, 457 F.3d 291, 295-96 (3d Cir. 2006) (quoting *Baby Neal v. Casey*, 43 F.3d 48, 55 (3d Cir. 1994) (noting that "factual differences will not render a claim atypical if the claim arises from the same event or practice or course of conduct that gives rise to the claims of the class members, and if it is based on the same legal theory")).

Yan's claims are typical of those of the Class. Yan alleges, as do all class members, that Defendants violated federal securities laws by making what they knew or should have known were false or misleading statements of material facts concerning the Company, or omitted to state material facts necessary to make the statements they did make not misleading. Yan, as did all members of the Class, purchased Ruhnn ADSs pursuant and/or traceable to the IPO at prices artificially inflated by Defendants' misrepresentations or omissions and was damaged upon the disclosure of those misrepresentations and/or omissions. These shared claims, which are based on the same legal theory and arise from the same events and course of conduct as the Class claims, satisfy the typicality requirement of Rule 23(a)(3).

The adequacy of representation requirement of Rule 23(a)(4) is satisfied where it is established that a representative party "will fairly and adequately protect the interests of the class." The class representative must also have "sufficient interest in the outcome of the case to ensure vigorous advocacy." *Riordan v. Smith Barney*, 113 F.R.D. 60, 64 (N.D. Ill. 1986); *Beck*, 457 F.3d at 296 (emphasizing that the adequacy inquiry "'serves to uncover conflicts of interest between named parties and the class they seek to represent'" (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997))).

Yan is an adequate representative for the Class. There is no antagonism between the interests of Yan and those of the Class, and his losses demonstrate that he has a sufficient interest in the outcome of this litigation. Finally, Yan has retained counsel highly experienced in vigorously and efficiently prosecuting securities class actions such as this action, and submits his choice to the Court for approval pursuant to 15 U.S.C. § 77z-1(a)(3)(B)(v).

### 4. Yan Will Fairly and Adequately Represent the Interests of the Class and Is Not Subject to Unique Defenses

The presumption in favor of appointing Yan as Lead Plaintiff may be rebutted only upon proof "by a purported member of the plaintiffs' class" that the presumptively most adequate plaintiff:

> (aa)   will not fairly and adequately protect the interest of the class; or
>
> (bb)   is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

15 U.S.C. § 77z-1(a)(3)(B)(iii)(II).

The ability and desire of Yan to fairly and adequately represent the Class has been discussed above. Yan is not aware of any unique defenses Defendants could raise that would

render him inadequate to represent the Class.  Accordingly, Yan should be appointed Lead Plaintiff for the Class.

### C.    LEAD PLAINTIFF'S SELECTION OF COUNSEL SHOULD BE APPROVED

The PSLRA vests authority in the Lead Plaintiff to select and retain lead counsel, subject to the approval of the Court.  *See* 15 U.S.C. § 77z-1(a)(3)(B)(v); *Osher v. Guess?, Inc.*, 2001 U.S. Dist. LEXIS 6057, at *15 (C.D. Cal. Apr. 26, 2001).  The Court should interfere with Lead Plaintiff's selection only when necessary "to protect the interests of the class." 15 U.S.C. § 77z-1(a)(3)(B)(iii)(II)(aa).

Here, Yan has selected Pomerantz as Lead Counsel for the Class.  Pomerantz is highly experienced in the area of securities litigation and class actions, and has successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors, as detailed in the firm's resume.  *See* Lieberman Decl., Ex. D.  Pomerantz recently secured a recovery of $3 billion on behalf of investors in the securities of Petróleo Brasileiro S.A. — Petrobras, the largest class action settlement in a decade and the largest settlement ever in a class action involving a foreign issuer.  Petrobras is part of a long line of record-setting recoveries led by Pomerantz, including the $225 million settlement in *In re Comverse Technology, Inc. Securities Litigation*, No. 06-CV-1825 (E.D.N.Y.), in June 2010.  *See* Lieberman Decl., Ex. D.  Most recently, Pomerantz announced as Lead Counsel on behalf of a class of Fiat Chrysler Automobiles N.V. investors that it has reached a $110 million settlement with the company.  *See* THE WALL STREET JOURNAL, *Fiat Chrysler to Settle Lawsuit for $110 Million*, April 8, 2019 (available at https://www.wsj.com/articles/fiat-chrysler-to-settle-lawsuit-for-110-million-11554746066).  As a result of Pomerantz's extensive experience in securities litigation and class actions involving issues similar to those raised in the Related Actions, Pomerantz has the skill

and knowledge necessary to enable the effective and expeditious prosecution of the Related Actions.  Thus, the Court may be assured that by approving the selection of counsel by Yan, the members of the class will receive the best legal representation available.

## CONCLUSION

For the foregoing reasons, Yan respectfully requests that the Court issue an Order: (1) consolidating the Related Actions; (2) appointing Yan as Lead Plaintiff for the Class; and (3) approving Pomerantz as Lead Counsel.

Dated:  December 6, 2019

Respectfully submitted,

**POMERANTZ LLP**

*/s/ Jeremy A. Lieberman*

Jeremy A. Lieberman
J. Alexander Hood II
600 Third Avenue, 20th Floor
New York, NY 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
Email: jalieberman@pomlaw.com
Email: ahood@pomlaw.com

**POMERANTZ LLP**
Patrick V. Dahlstrom
Ten South LaSalle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184
Email: pdahlstrom@pomlaw.com

*Counsel for Movant and*
*Proposed Lead Counsel for the Class*